# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHRISTOPHER J. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-10-481-JHP |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Christopher J. Jones (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on February 18, 1972 and was 38 years old at the time of the ALJ's decision. Claimant completed his education through the eleventh grade. Claimant has worked in the past as a tong operator, sanitation truck driver, long haul truck driver, and

construction manual laborer. Claimant alleges an inability to work beginning July 25, 2006 due to limitations resulting from chronic pain in his hands, arms, and legs as well as problems with reading and writing, learning disabilities, and depression.

## Procedural History

On May 5, 2008, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On November 24, 2009, an administrative hearing was held before ALJ Osly F. Deramus in McAlester, Oklahoma. On May 10, 2010, the ALJ issued an unfavorable decision on Claimant's applications. The Appeals Council denied review of the ALJ's decision in an undated decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work with some

limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) failing to properly evaluate Claimant's lumbar impairments and to give adequate consideration to whether his physical impairments met or equaled a Listing at step three; and (2) reclassifying Claimant as having a marginal education rather than being illiterate at step five.

## Evaluation of Claimant's Impairments

Claimant contends the ALJ failed to properly assess his chronic low back condition to determine whether it met any listing for Disorders of the Spine at step three. In his decision, the ALJ found Claimant suffered from the severe impairments of back problems and a learning disability. (Tr. 10). The ALJ determined Claimant retained the RFC to perform sedentary work except that he may occasionally lift and carry 10 pounds, frequently lift and carry less than 10 pounds, stand and walk for at least 2 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, occasionally balance, but never stoop, crouch, crawl, or kneel, occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. Claimant was also restricted by the ALJ to only unskilled work. (Tr. 13).

Claimant's back problems arose from a work related motor vehicle accident in December of 2004. (Tr. 14). On December 27, 2004, Claimant was evaluated by Dr. Randel D. Estep. Dr. Estep found Claimant's back was tender to palpation over the low thoracic and lumbar areas. He had near full ROM. He had some pain in the extremes of motion and had negative straight leg raising. Claimant was diagnosed with thoracolumbar strain. (Tr. 259).

In January of 2005, Claimant was again seen by Dr. Estep. He noted increased soreness of the back and diagnosed thoracolumbar strain with history of wedging T11, questionably acute. (Tr. 254).

On March 1, 2005, Claimant was evaluated by Dr. Michael Wright. Dr. Wright noted Claimant's low back pain and constant bilateral leg pain. (Tr. 188). An MRI showed a slight T11 compression fracture with a mild injury to the disc above and below with a 10% to 15% wedge compression fracture. No nerve root compression was noted. The fracture appeared to have healed. (Tr. 186).

On April 21, 2005, Claimant was released for work without restrictions. He ambulated with normal heel to toe, toe to toe, and heel to heel gait. He had normal motor and sensory examination throughout. Deep tendon reflexes were 1+ at the knees and ankles. Straight leg raising was negative bilaterally. Claimant forward

flexed 80 decrees, extended 30 degrees and bends right and left 30 degrees. No significant tenderness at the thoracolumbar junction was noted. (Tr. 184).

On February 1, 2006, Claimant underwent thoracic and lumbar MRI scans with Dr. James M. Odor. Dr. Odor found the lumbar MRI showed mild facet and mild degenerative disc changes but were otherwise unremarkable. The thoracic MRI showed a healed T11 compression fracture with degenerative disc changes on either side of it. Claimant reported quite a bit of pain and some referred pain. Dr. Odor discussed Claimant's job and found it was probably not helping the situation but did not endanger Claimant to continue his job. Dr. Odor referred Claimant for injections. (Tr. 207).

On April 3, 2006, Claimant was attended by Dr. Odor. Claimant reported he felt much better after two injections by Dr. Gaylan Yates. He continued to work. Dr. Odor did not recommend surgical intervention and found Claimant had reached maximum medical improvement. He was released to work with instructions to use proper back mechanics at all times. (Tr. 206).

On August 17, 2006, Claimant reported to Dr. Odor that he had been doing well until July 21, 2006 when he heard a pop in his back and his legs gave out. (Tr. 245). Updated MRI scans were unchanged from prior scans. The lumbar spine was entirely normal

in appearance. At T11-12, a medium-sized circumferential disc bulge mildly indented the anterior thecal sac. The foramina were uncompromised. At T10-11, a small circumferential disc bulge mildly indented the anterior thecal sac. The foramina were uncompromised. (Tr. 202).

On December 12, 2006, Claimant was treated by Dr. Gaylan D. Yates with a final thoracic epidural steroid injection. The epidural was performed at the T10-11 and T11-12 region where there was evidence of some degenerative disc disease and slight cord impingement. Dr. Yates did not believe Claimant was a candidate for further injections. (Tr. 199).

In a December 22, 2006 evaluation, it was noted that "[w]ith lumbar mobility, he demonstrated significant restrictions in extension; moderate restrictions in left lateral flexion; and mild restrictions in flexion, right lateral flexion. With hip ROM, he demonstrated significant restriction in left external rotation and left internal rotation; moderate restrictions in left abduction, right internal rotation, and right external rotation; and mild restrictions in flexion (left>right), left extension , and right internal rotation. [Claimant] demonstrated decreased strength on the right with hip flexion, extension, and abduction as measured on the Hanoun." His performance on testing, however, demonstrated he

could perform medium work. (Tr. 193).

On October 10, 2007, Claimant was evaluated by Dr. John Munneke. Claimant described his pain as a 6 on a 10 point scale. His pain worsened with lifting, bending, or twisting. He was found to move reasonably well and was alert and oriented. Claimant did have persistent tenderness in the paravertebral muscles of his thoracic spine. Interspinous ligamentous tenderness was noted in the mid thoracic area and range of motion was restricted secondary to pain and muscle spasms. (Tr. 291).

On October 6, 2008, Claimant was evaluated by Dr. Ronald Schatzman. Dr. Schatzman found Claimant had reduced range of motion in the lumbosacral spine area with decreased sensation below the knee of both legs and positive straight leg raising, both supine and sitting. (Tr. 309).

On December 2, 2008, Claimant was evaluated by Dr. Sherman B. Lawton. Dr. Lawton determined Claimant had no evidence of spasms in his back. Although Claimant complained of pain if touched, Dr. Lawton did not believe the pain was "organic." Straight leg raising was easily done to 90 degrees with Claimant distracted. Claimant showed normal strength and bulk in all major muscle groups of the arms and legs. Claimant used a cane but Dr. Lawton saw no neurologic reason why that would be useful or necessary. (Tr. 313-

14).

Listing 1.04C requires certain factual findings be present, in stating:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. I § 1.04C.

The ALJ made the general finding that Claimant's impairments did not meet a listing. (Tr. 11). He then discussed in some detail the medical evidence surrounding Claimant's back condition.

(Tr. 14-20). Claimant bears the burden of demonstrating his impairments meet a listing. <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530-31 (1990). There has been no evidence presented in the record to demonstrate nerve root compression. To the contrary, the evidence expressly leads to the opposite conclusion. The ALJ is "required to discuss the evidence and explain why he found that [Claimant] was not disabled at step three." <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009 (10th Cir. 1996). He need not, however, discuss every piece of evidence. <u>Id</u>. at 1009-10. The ALJ performed a proper step three analysis and his determination that Claimant did not have a listed impairment is supported by substantial evidence.

### Educational Findings

Claimant contends the ALJ erred in failing to find he was illiterate at step five. Although Claimant completed his education through the eleventh grade, he has testified that he cannot read or write except for his name and can do a little bit of math. (Tr. 31). He states he was just passed through school. (Tr. 32). His limited writing ability is contradicted by his Disability Report he completed where he stated he could write more than his name. (Tr. 131). Claimant testified, however, that he could not pass the test to become an unarmed security guard because it was too hard to read the materials and take the state test. (Tr. 36).

The ALJ classified Claimant as having a "marginal education" with the ability to communicate in English. (Tr. 21). Illiteracy is defined in the regulations as "the inability to read or write . . . . [S]omeone [is] illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." Id. § 404.1564(b)(1). A person with a "marginal education," on the other hand, has "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs.... [F]ormal schooling at a 6th grade level or less is [generally considered] a marginal education." Id. § 404.1564(b)(2). "[I]f there is no other evidence to contradict it, [the Commissioner] will use . . . numerical grade level to determine [a claimant's] educational abilities." Id. § 404.1564(b). This Court cannot conclude that the record is sufficient for the ALJ to have found Claimant had a marginal education. Evidence in the record contradicts the finding that Claimant is literate. On remand, the ALJ shall determine Claimant's level of literacy in order to make a finding as to his educational ability and modify his questioning of the vocational expert accordingly.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 28th day of February, 2012.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE